# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Tyreece D. Pitts,

|  |  |  |
|---|---|---|
|  | Petitioner, | Case No. 5:21-cv-11558 |
| v. |  | Judith E. Levy |
|  |  | United States District Judge |
| Melinda Braman, |  |  |
|  |  | Mag. Judge David R. Grand |
|  | Respondent. |  |

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY [1]

Tyreece D. Pitts, a Michigan prisoner, filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 in 2021.[1]  Pitts was convicted after a bench trial in the Washtenaw Circuit Court of assault with intent to murder, MICH. COMP. LAWS § 750.83, first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), armed robbery, MICH. COMP. LAWS § 750.529, and several other offenses. (ECF No. 7-1, PageID.243.) He was sentenced to a string of prison terms, the longest of which are his two 30–60 year

---

[1] The Court apologizes to Petitioner for the delay in resolving his petition.

terms for the assault and armed robbery convictions. (*Id.* at PageID.244–245.)

After careful consideration of the petition for writ of habeas corpus, the Court denies the writ because none of Pitts' claims warrant habeas relief. The Court will also deny a certificate of appealability.

## I.

The Michigan Court of Appeals summarized the facts of Pitts' case:

Defendant's convictions arose out of a confrontation between himself and Johnny McCrary at McCrary's home. The incident began when McCrary noticed that defendant had backed his Suburban too far into McCrary's driveway and struck the building. McCrary recognized defendant because they had met once previously, and defendant was an acquaintance of McCrary's neighbor, Tammie Merideth. At the time of the incident, defendant was wearing a Red Wings[2] jacket and a matching baseball cap. Defendant spoke with Merideth and indicated that he was there to go to McCrary's home. However, defendant acceded to Merideth's demand to move his vehicle. McCrary believed that defendant was therefore leaving and went to the restroom.

McCrary heard the door to his home open while he was in the restroom. He had not given anyone permission to come into his home, but he believed at the time that it might be Merideth. However, when he emerged, he found defendant standing in front of his television. McCrary testified that

---

2 The Red Wings are a professional hockey team based in Detroit.

defendant began "talking to [McCrary] about trying to make a proposition, deal about something he's trying to get rid of, and he liked what was in [McCrary's] house." Defendant also mentioned "[r]unning what you got," which McCrary interpreted as interest in some money McCrary had left out. McCrary put the money away and told defendant that he should file a police report about crashing into his home. Defendant then left McCrary's home.

Merideth asked defendant for a cigarette while defendant was walking from McCrary's home to his Suburban. A passenger in defendant's Suburban gave Merideth a cigarette, and Merideth proceeded to smoke it near McCrary's door. Defendant then returned to McCrary's home and asked McCrary to buy "dope." McCrary refused, whereupon defendant produced a pistol that was missing its handgrip, racked it, and pointed it at McCrary. Defendant fired a shot into the floor, and McCrary fled from his home. Defendant pursued and fired several shots at McCrary. Merideth opened the door for McCrary and stood behind defendant while defendant was shooting. One shot went through McCrary's forearm, breaking the bone in the process. Another shot struck McCrary in the foot. McCrary began knocking on doors for help, and eventually someone called the police. By this time, McCrary was feeling sleepy. When the paramedics arrived, they considered McCrary to be in critical condition, and he was transported to the hospital by ambulance with its lights and sirens activated.

During the trip to the hospital, McCrary identified defendant as someone named "Tyreece," and stated that defendant had been wearing a red and black jacket. Police at the scene of the shooting interviewed Merideth and set up a perimeter. Based

3

on information Merideth gave, the police went to a residence where they observed a man, later confirmed to be defendant, in a Red Wings jacket and a black baseball cap next to a Suburban. The police activated their patrol car lights, announced that they were police officers, and ordered defendant to get down. Instead, defendant ran into a wooded area behind the residence, losing his baseball cap in the process, and re-emerged shortly thereafter without his jacket. The police again ordered defendant to get down, and defendant complied. Defendant was then arrested.

Officers then searched the wooded area for the missing Red Wings jacket. The jacket was found five or six feet down a slope. In the pocket of the jacket was a handgun missing its handgrip. At trial, a firearm and tool mark expert, Detective Dean Molnar, testified that the handgun found in the jacket had been used to fire all of the bullet casings recovered from the scene. During the trial, defendant moved for directed verdicts, arguing that there was no evidence he had demanded money or intended to kill McCrary, thereby precluding convictions for armed robbery or assault with intent to commit murder. Defendant also argued that his offer to sell McCrary drugs suggested that he had permission to enter the home. The trial court disagreed and denied defendant's motions for directed verdicts. The trial court then convicted defendant[.]

*People v. Pitts*, No. 338673, 2019 WL 939020, at *1–2 (Mich. Ct. App. Feb. 26, 2019).

4

Following his conviction and sentence, Pitts filed a notice of appeal and was appointed appellate counsel. His counsel filed a brief on appeal that raised three claims:

> I. Mr. Pitts' right to the effective assistance of counsel under our state and federal constitutions was violated where trial counsel failed to object to the prosecution's presentation of an unendorsed witness, failed to prepare a defense and/or failed to adequately challenge a key prosecution expert witness.
>
> II. The evidence was insufficient to sustain Mr. Pitts' convictions of armed robbery, home invasion, and assault with intent to murder. The trial court reversibly erred in holding the evidence was sufficient to convict Mr. Pitts of these charges.
>
> III. Mr. Pitts is entitled to resentencing where offense variables 3, 4, 6, 7, 9, and 17 were erroneously scored at 25, 10, 50, 50, 10, and 10 points respectively and where a proper scoring of the offense variables would reduce his guideline range from 270-450 months to 225-375 months. Trial counsel was ineffective for failing to object to the erroneous scorings of offense variables 6 and 13 at the time of sentencing.

(ECF No. 7-17, PageID.1146.)

Pitts also filed his own supplemental pro se brief that enumerated an additional nine claims:

1. Ineffective assistance of counsel ... (P.E.H. transcript pg 85/1-5) as well as questions he didn't ask or motion to dismiss at any time!!!

2. District court judge abused her discretion with bind over. . .

3. Victim/witness was coerced into lying . . . saying defendant discharged into the floor as well as robbery attempt from A.P.A. and O.I.C which was (evidence tech) from crime scene / victim's home. There was no bullet hole in the wall, floor, rug, window, door, TV, etc. Victim said he left the defendant in the home and ran never seeing him again. . . . People's trial exhibits #6 and #30 show no bullet marker where the defendant was supposed to have fired a round, or to what witness testified to (Merideth). . . .

4. Failed to make officer (Yee) produce (body cam) statement from victim. . . .

5. Circuit Court Judge abused his discretion with denial of motion to (dismiss/quash) and motion hearing "Acknowledgement that district court judge didn't have probable cause to bind over." . . .

6. Circuit court judge abused his discretion with denial of new counsel for trial (conflict of interest). . . .

7. Circuit court judge abused his discretion in trial judgement due to numerous accounts; Facts, technicalities and false identification, etc. . . . trial exhibits 31-31(A) shell casing (4) was in flower bed and exhibit 32 shell casings #5 and #6 were found in lawn between the two residences (1645 victim's home

and 1635 neighbor's home) impossible to have been fired from in front of victim's residence as witness said 4–6 shots and or opposed to shell casing (4) being found in flower bed!!! . . .

8. Ineffective Assistance of Counsel . . .

9. Arresting officers failed to Mirandize defendant . . . tangible, physical evidence, gun, shirt, coat, all from the woodline.

(ECF No. 7-17, PageID.1209–1211.)

The Michigan Court of Appeals affirmed Pitts' convictions and sentence in an unpublished opinion.[3] *Pitts*, 2019 WL 939020, at *9. The decision first addressed and rejected on the merits the claims raised in counsel's brief. *Id.* at *2–7. The court then noted the difficulty in identifying the claims raised in Pitts' pro se supplemental brief. *Id.* at *7. The court rejected the claims it was able to identify as having sufficient support to be considered, stating "[t]o the extent we can comprehend defendant's arguments, we find them to be without merit." *Id.* It found

---

[3] The Court remanded the case for the limited purpose of correcting the sentencing information report. *Pitts*, 2019 WL 939020, at *6–7, *9 ("Any error by trial counsel was harmless. Nevertheless, defendant is entitled to a correct sentencing information report. We therefore remand to the trial court for the ministerial task of correcting defendant's total [] score.").

that if Pitts intended to raise additional claims, they were waived due to inadequate briefing. *Id.* at *9.

Pitts' appellate counsel then filed an application for leave to appeal in the Michigan Supreme Court, raising the same three claims presented in counsel's brief to the Court of Appeals. (ECF No. 7-19, PageID.1335.) Pitts also filed a pro se supplemental brief restating the three claims presented in counsel's brief. (See ECF No. 7-19, PageID.1387.) The Michigan Supreme Court denied leave to appeal by standard form order. *People v. Pitts*, 504 Mich. 948 (2019) (Table).

Pitts then returned to the trial court and filed a difficult to interpret pro se motion for relief from judgment. (ECF No. 7-10, 7-13.) The trial court denied the motion in an order dated October 18, 2010, identifying one claim: "Ineffective assistance of trial/appellate counsel and a demand for post-conviction DNA testing." (ECF No. 7-14, PageID.710.) The court found that Pitts failed to establish "good cause" and "actual prejudice" under Michigan Court Rule 6.508(D)(3) for failing to raise the claim on direct appeal and that his ineffective assistance of appellate counsel claim was without merit. (*Id.* at PageID.710–712.)

Pitts appealed to the Michigan Court of Appeals, this time raising three questions that Pitts asked the Michigan Court of Appeals to answer in the affirmative:

> I. Was Mr. Pitts' right to the effective assistance of counsel under our state and federal constitutions violated when trial counsel failed to properly impeach evidence presented by the prosecuting attorney to the trial court?
>
> II. Did the trial court abuse its discretion when they failed to properly [analyze] the plain error test for prosecutorial misconduct and accordingly apply it to the harmless error standard which denied appellant Mr. Pitts his constitutional right to due process?
>
> III. Was it constitutional error to convict the defendant of armed robbery, assault with intent to murder, and home invasion? Did the trial court reversibly err in holding the evidence was sufficient to convict Mr. Pitts of these charges? Did the defendant show "good cause and prejudice" in his motion for relief from judgment to the trial court? Consistent with MCR 6.508(D)(3)(A) and (B) . . .

(ECF No. 7-18, PageID.1272.)

The first claim appeared to refer to trial counsel's alleged failure to object to the prior record variable of the sentencing guidelines, and his failure to object to the physical evidence found near the scene of arrest because it was not tested for fingerprints or DNA. (*Id.* at PageID.1280–

9

1283.) The briefing of the second claim does not concern any alleged prosecutorial misconduct but is mostly devoted to an assertion that insufficient evidence was presented at trial. (*Id.* at PageID.1284–1287.) Likewise, the argument section addressing the third claim does not match the heading, and it seems mostly directed at challenging defense counsel's overall trial preparation and performance. (*Id.* at PageID.1288–1290.) The Michigan Court of Appeals denied leave to appeal because Pitts "failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 7-18, PageID.1270.)

Pitts appealed to the Michigan Supreme Court. His application for leave to appeal once again changed the argument headings, but the brief largely seemed to raise the same arguments he presented to the Court of Appeals. (ECF No. 7-20, PageID.1559–1571.) The Michigan Supreme Court denied leave to appeal by form order. *People v. Pitts*, 506 Mich. 962 (2020) (Table).

## II.

As an initial matter, the Court notes that it is faced with the same difficulties faced by the state courts on direct and post-conviction review in interpreting Pitts' pro se pleadings. The habeas petition's first claim

10

heading suggests it involves an abuse of discretion by the trial court in admitting physical evidence. But it is followed by disjointed and fragmented factual allegations that concern unrelated matters. (ECF No. 1, PageID.5.) The second and third claims are labeled "prosecutorial misconduct" and "ineffective assistance of counsel," and they somewhat more clearly assert the factual bases for the claims. (*Id.* at PageID.7–8.) Finally, the fourth claim is labeled as challenging an ex parte communication between the trial court and prosecutor, but the supporting facts seem to allege that the trial court was biased against Pitts because of its involvement in prior prosecutions of Pitts. (*Id.* at PageID.10.)

Pitts' supporting brief adds to the lack of clarity. Despite some misleading headings and case citations, the first and last parts of the brief appear to challenge the sufficiency of the evidence and the adequacy of defense counsel's performance. (*Id.* at PageID.15–20, 31–36.) The second part of the brief—again despite some inapplicable case citations— appears to assert that the physical evidence found near the scene of Pitts' arrest should have been challenged by defense counsel. (*Id.* at PageID.20–22.) The brief goes on to claim defense counsel should have

11

moved for the testing of blood samples taken from the crime scene. (*Id.* at PageID.23–24.)

As set forth below, there seem to be multiple factual bases for Pitts' habeas claims. The Court understands Pitts to be concerned with the fact that the jacket and handgun found near the scene of his arrest were not tested for fingerprints or DNA. Without such corroborating evidence, he asserts those items should not have been admitted at trial. (*Id.* at PageID.18–19.) He also complains that the prosecutor was permitted to untimely add an expert witness to testify that the gun found in the jacket was the one that fired the shots at the scene. (*Id.*) Pitts argues that the improperly admitted jacket, gun, and expert testimony led to him being wrongfully convicted. As the Court understands it, Pitts claims that none of this would have occurred but for prosecutorial misconduct, ineffective assistance of counsel, and the bias of the trial judge.

Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a habeas petition "specify all the grounds for relief available to the petitioner [and] state the facts supporting each ground." Nevertheless, a less stringent standard is applied to pro se petitions. *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th

Cir. 1985) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). As the Court stated in *Franklin*, the interpretation of pro se petitions "requires active interpretation . . . to construe [the] petition 'to encompass any allegation stating federal relief.'" 765 F.2d at 85 (quoting *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)). Consistent with these principles, a habeas court may interpret an otherwise insufficient habeas petition where it appears that the claims it raises are based on the claims raised in the petitioner's state-court appeals. *See, e.g., Pointer v. Richards*, 17-cv-2048, 2018 WL 3029137, at *9 (N.D. Ohio May 25, 2018), *report and recommendation adopted in relevant part, rejected in part on other grounds sub nom*, *Pointer v. Noble*, 17-cv-2048, 2018 WL 3023190 (N.D. Ohio June 18, 2018).

Accordingly, reading Pitts' various state-court briefs and his habeas brief together as interpretive guides, the Court understands the habeas petition to be raising the following claims, and it restates them as follows:

> I. The trial court abused its discretion, leading it to find Pitts guilty despite insufficient evidence being presented at his bench trial.

II. The prosecutor committed misconduct by: (1) untimely adding the firearm expert witness to its witness list, and (2) eliciting false testimony.

III. Defense counsel was ineffective for: (1) failing to challenge the late endorsement of the expert witness, (2) having a conflict of interest due to being from the same firm as Pitts' prior counsel, (3) failing to hire a defense expert, and (4) failing to object to admission of the coat and gun found near the arrest scene because they had not been subjected to fingerprint or DNA testing.

IV. The trial court was biased against Pitts because it had presided over two previous criminal cases against him.

### III.

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state-court adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in

14

[Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that Supreme Court] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further,

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 103 (cleaned up).

## IV.

## A.

Pitts first claims that insufficient evidence was presented at trial to sustain his convictions. Much of his habeas petition, as indicated above, is focused on the *reasons* Pitts believes the trial court found him guilty despite insufficient evidence – such as judicial bias, ineffective assistance of counsel, prosecutorial misconduct, and the improper admission of the jacket, gun, and expert testimony. Those matters are discussed below. But the petition also asserts that constitutionally insufficient evidence was presented, (ECF No. 1, PageID.21–22), which was one of the claims raised by appellate counsel on direct appeal.

The Michigan Court of Appeals rejected the claim on direct review as follows:

B. Armed Robbery

. . . Defendant argues that the evidence did not establish the requisite specific intent. He argues that the evidence only

16

reflects a dispute after a failed drug deal. He further argues that there was no evidence he said anything to McCrary when he returned to McCrary's home and brandished his handgun. He concludes that the only indication of an intent to steal was McCrary's subjective assessment of events, which should not be given any weight.

We disagree. Defendant's statement to Merideth that he was going to McCrary's home does not establish a prearranged drug deal as defendant suggests, and McCrary's decision to use the restroom upon the belief that defendant was leaving suggests that in fact no drug deal was contemplated. According to McCrary's testimony, defendant indicated that he wanted McCrary's possessions, and defendant only brought up a drug deal after McCrary put his money away. McCrary also indicated that defendant's proposed drug deal was unreasonable and that defendant was "pushing." The fact that defendant left McCrary's home briefly before returning uninvited does not necessarily show that defendant lacked the intent to steal. Rather, given the short duration of the interlude and defendant's clearly intentional demonstration of force, a reasonable trier of fact could conclude that defendant continued to covet McCrary's possessions and intended to frighten McCrary into compliance.

"[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v. Kanaan*, 278 Mich. App. 594, 622 (2008). It is the exclusive role of the trier of fact to evaluate the credibility of witnesses and determine how to resolve factual conflicts. *People v. Wolfe*, 440 Mich. 508, 513–

515 (1992), amended on other grounds 441 Mich. 1201 (1992).
Defendant's conviction of armed robbery does not depend on
impermissible speculation. *See People v. Bailey*, 451 Mich.
657, 673–675, 681–682 (1996).

## C. Home Invasion

Defendant next argues that there was insufficient evidence to
establish that he committed a home invasion. Defendant
specifically challenges the first element of first-degree home
invasion, which requires either that defendant broke and
entered a dwelling, or that defendant entered a dwelling
without permission. *People v. Baker*, 288 Mich. App. 378, 384;
(2010). Defendant contends that there was no evidence
showing that he broke and entered McCrary's home or that he
entered without permission.

To the contrary, McCrary testified that he had given no one
permission to enter his home. McCrary also testified that his
door was closed prior to discovering defendant inside his
home. "A breaking is any use of force, however slight, to
access" the home. *See Heft*, 299 Mich. App. at 76. Defendant
necessarily used some force to open the door. Defendant
disputes McCrary's testimony as incredible. However, as
discussed, it is the exclusive role of the trier of fact to evaluate
witness credibility. Defendant has not articulated how
McCrary's testimony was so patently absurd or impossible
that we should invade that role. *See People v. Lemmon*, 456
Mich. 625, 642–644 (1998). The trier of fact could reasonably
conclude that the first element of first-degree home invasion
was established under either alternative.

## D. Assault With Intent to Murder

18

Defendant argues that the prosecution failed to present sufficient evidence that he had the intent to kill McCrary, which is an essential element of the offense of assault with intent to murder. *See People v. Brown*, 267 Mich. App. 141, 147 (2005). He concedes that there was evidence that he fired at least three shots at McCrary and that two rounds struck McCrary. Nevertheless, he argues that, had he wanted to kill McCrary, he could have shot him at close range in his home or could have shot him in a "more damaging part of the body than his foot and arm."

An intent to kill may be inferred from the totality of the evidence, including the nature and inherent dangerousness of the instrument used by a defendant. *See People v. Taylor*, 422 Mich. 554, 568 (1985), and *People v. Carines*, 460 Mich. 750, 759–760 (1999). The evidence showed that defendant chased McCrary from McCrary's home, turned in the same direction that McCrary fled, and fired at least three shots at McCrary as he fled. McCrary testified that he suffered his first gunshot wound as he was passing his neighbor's window, located a few feet from McCrary's front door. Defendant continued to fire at McCrary and struck him one additional time. The evidence that defendant followed McCrary and fired several shots from a lethal weapon at close range was sufficient to support the finding that defendant intended to kill McCrary. *See Taylor*, 422 Mich. at 568. Unlike the gunshot inside McCrary's home, nothing about defendant's subsequent shots in any way suggests an intentional avoidance of lethality.

We conclude that defendant has not established that there was insufficient evidence to support any of his convictions.

19

*Pitts*, 2019 WL 939020, at *3–5.

It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Under the Due Process Clause, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quoting *Jackson*, 443 U.S. at 326).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*,

443 U.S. at 319. That rule "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16; *see also Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002) ("In *habeas* cases we review the sufficiency of the evidence supporting a jury verdict, through the framework of § 2254(d), to determine whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). The Sixth Circuit instructs that state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA must overcome "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The state court reasonably determined that sufficient evidence was presented at Pitts' bench trial to sustain his convictions.

With respect to the armed robbery conviction, Pitts asserted on direct appeal that there was no evidence of his intent to deprive the victim of any property. (ECF No. 7-19, PageID.1352–1354.) At trial, the victim testified that Pitts commented on his property and cash when he

21

first entered the house. (ECF No. 7-8, PageID.368.) Pitts then exited the residence and retrieved a handgun from his vehicle, returned, pointed the weapon at the victim, and fired a shot into the floor. (*Id.* at PageID. 375–379.) The victim understood these actions as Pitts indicating that he wanted the property. (*Id.*) Pitts' actions were reasonably viewed by the trial court as communicating an intent to rob. Under state law, the prosecutor may prove intent with such circumstantial evidence. *Kanaan*, 278 Mich. App. at 622.   The state court reasonably rejected this argument.

With respect to the home invasion conviction, Pitts argued on direct appeal that no evidence was presented to establish that he entered the victim's home without permission. (ECF No. 7-19, PageID.1354–1355.) The victim testified at trial that Pitts hit his house with his vehicle. (ECF No. 7-8, PageID.355–356.) After the victim looked outside to see what happened and believed that the vehicle was driving away, the victim went into his bathroom. (*Id.* at PageID.361.) While he was in the bathroom, he heard someone open his front door. (*Id.* at PageID.364.) He testified that he had not given anyone permission to enter. (*Id.*) When the victim came back to his living room, Pitts was standing inside. (*Id.* at

PageID.365.) The victim said, "What are you doing in my house? Did I give you permission? I don't know you like that, you know, for you to be in my home." (*Id.* at PageID.366.) As set forth above, after that interaction, Pitts commented on the victim's property, retrieved his gun, and shot the floor and then the victim. The victim's testimony therefore presented the trial court with sufficient evidence to find that Pitts entered the residence without permission. The argument is without merit.

Finally, Pitts asserted on direct appeal that insufficient evidence was presented to show that he intended to murder the victim. (ECF No. 7-19, PageID.1356–1357.) The victim testified that after Pitts fired the gun into the floor, the victim ran out of his residence. (ECF No. 7-8, PageID.378–381.) Pitts pursued him and fired more shots. The victim was struck twice – once in the back of the forearm, and a second bullet hit him in the back of the foot. (*Id.* at PageID.382–384.) The victim's wounds were life threatening because of the amount of blood loss. (*Id.* at PageID.390–392, 433–435.) At trial, the victim graphically described the gruesome damage to his arm. (*See, e.g.*, *id.* at PageID.392.) Evidence that Pitts shot and hit the victim twice with a powerful handgun adequately

supports the trial court's conclusion that he intended to murder the victim.

Accordingly, Pitts' sufficiency of the evidence claim is without merit.

### B.

Pitts next claims that the prosecutor committed misconduct. Construing the petition liberally, Pitts makes two allegations of prosecutorial misconduct. First, Pitts asserts that the prosecutor wrongfully moved to add the firearm expert to its witness list after the time for doing so expired. Pitts also argues that the prosecutor knowingly elicited false testimony from the victim, McCrary, and the eyewitness, Merideth.

Regarding the late addition to the witness list, the Michigan Court of Appeals discussed the predicate for the claim when it discussed Pitts' ineffective assistance of counsel claim:

> The prosecution did not initially include Molnar on its witness list. Less than two weeks before trial, the prosecutor advised the trial court that she had just received a ballistics report and provided it to the defense. However, the defense refused to stipulate to the admission of the report, so she had to "get the ballistics forensic guy." At trial, defense counsel stipulated to Molnar testifying as an expert. After Molnar gave his

testimony, the attorneys stated on the record that the prosecutor had advised defense counsel that Molnar would be added to the witness list, and defense counsel had agreed to stipulate that Molnar was an expert. Defendant argues that defense was ineffective for failing to object to Molnar's endorsement or seek an adjournment to better prepare for Molnar's testimony. We disagree.

The prosecutor may add or delete witnesses from the prosecution's witness list at any time with the defense's agreement or with the trial court's permission for good cause shown. *See People v. Everett*, 318 Mich. App. 511, 519 (2017), citing MCL 767.40a. The record shows that the prosecutor did not have notice of Molnar until after she filed her witness list, and she made the defense aware of Molnar as soon as practicable. The recent discovery of a witness constitutes good cause for late endorsement. *See People v. Canter*, 197 Mich. App. 550, 563 (1992). Furthermore, precluding a witness from testifying "is extreme and should be limited to only the most egregious cases." *People v. Yost*, 278 Mich. App. 341, 379 (2008).

In any event, considerable eyewitness testimony and circumstantial evidence linked defendant to the gun and the bullets even without Molnar's testimony. A reasonable defense attorney could conclude that objecting to Molnar would have been both futile and unhelpful. Instead, defense counsel could reasonably elect to concentrate on issues more likely to succeed, such as challenging evidence of defendant's intent rather than evidence of defendant's conduct. *See People v. Matuszak*, 263 Mich. App. 42, 60 (2004). Because there was a legitimate strategic reason for allowing Molnar's late endorsement and for allowing his testimony to go unrebutted,

> defendant has not overcome the presumption that defense counsel's decision was a matter of sound trial strategy. Defendant has therefore not established that he received ineffective assistance of counsel.

*Pitts*, 2019 WL 939020, at *3. The Michigan Court of Appeals also rejected this claim regarding the late addition of the expert witness in the context of Pitts' evidentiary objections. *Id.* at *8.

The Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986), establishes the standard for evaluating claims of prosecutorial misconduct. Under *Darden*, a prosecutor's misconduct deprives a criminal defendant of due process of law where it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *Darden* therefore sets a "high bar" for relief. *Stewart v. Trierweiler*, 867 F.3d 633, 639 (6th Cir. 2017).

Here, the state court found that the late endorsement of the witness was proper under state law. *See Pitts*, 2019 WL 939020, at *3. The Sixth Circuit has rejected the sort of arguments Pitts presents here in directly parallel circumstances. *See Warlick v. Romanowski*, 367 F. App'x 634, 643–44 (6th Cir. 2010) ("A decision regarding the endorsement of a

witness generally constitutes a state law matter within the trial court's discretion, and Warlick has not presented a legitimate reason for disturbing the trial judge's ruling, which has already been deemed proper under Michigan state law."). Accordingly, the prosecutor's motion to add the expert witness was not improper—let alone fundamentally unfair—when it was done in compliance with state law. The addition to the witness list therefore cannot be said to have "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). This claim is without merit.

With respect to the presentation of false evidence, the claim was raised on direct appeal in Pitts' pro se brief, and the state court rejected it as follows:

> It is a violation of due process for the prosecution to present coerced testimony or to withhold evidence affecting a prosecution witness' credibility. *See People v. Canter*, 197 Mich. App. 550, 569 (1992); *People v. Stacy*, 193 Mich. App. 19, 25 (1992). Defendant argues that Merideth falsely identified him as the shooter after being coerced into providing conflicting accounts. However, defendant has the burden of providing some evidence in support of this proposition. *See Stacy*, 193 Mich. App. at 28–30. Defendant vaguely refers to inconsistencies in her testimony, but inconsistent testimony does not establish that Merideth was

27

coerced. Rather, inconsistencies go to the weight and credibility of her testimony and are the proper subject of cross-examination. *See, e.g., Lemmon*, 456 Mich. at 642–643. Any inconsistencies are for the finder of fact to resolve. *See People v. Muhammed*, --- Mich. App. ---- (2018) (Docket No. 338300, slip op. at p. 15).

Defendant also argues that Merideth inaccurately identified defendant after the police showed her photographs of defendant's brother, who may have been involved in a separate criminal matter. However, the evidence indicated that Merideth knew defendant well and clearly had an independent basis for identifying him as the person involved. *See People v. Gray*, 457 Mich. 107, 115–116 (1998) (discussing the independent basis doctrine for identifications). Accordingly, defendant has not identified any error with regard to the admission of Merideth's testimony.

Defendant similarly argues that McCrary was coerced into testifying, apparently because no bullet or bullet-hole from the interior of McCrary's home was introduced into evidence. Defendant also contends that an evidence technician who testified about a shell casing recovered from the interior of McCrary's home must be lying, again because no bullet-hole was presented. Defense counsel cross-examined both McCrary and the technician, whose testimonies were consistent with each other, and the trier of fact was able to evaluate their credibilities. Defendant has not established any basis for showing coercion. *See Stacy*, 193 Mich. App. at 28–30.

*Pitts*, 2019 WL 939020, at *7–8.

Prosecutors "may not knowingly present false evidence." *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate*, 386 U.S. 1 (1967)). The Supreme Court has made clear that "deliberate

28

deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But "[t]o prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009). Petitioner must demonstrate that the testimony in question was "indisputably false" and that the alleged perjury was not harmless error. *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019).

The thrust of Pitts' argument is that because the prosecution did not present specific items of corroborating evidence, such as bullet casings that would be expected to be found in certain locations or other physical evidence connecting Pitts to the crime, it suggests that Merideth and McCrary's testimony was fabricated. (ECF No. 1, PageID.18.) Pitts also asserts that inconsistencies in the testimony suggest the prosecution

knew the two witnesses were being untruthful. (*Id.* at PageID.15.) These were points covered in cross-examination by defense counsel. (*See, e.g.*, ECF No. 7-8, PageID.447–459 (cross-examination of Merideth).) Perceived deficiencies in the physical evidence and inconsistencies do not show that the two witnesses' testimony was indisputably false or that the prosecutor knowingly presented false evidence. *See Macon v. Davis*, 450 F. App'x 491, 493 (6th Cir. 2011). The claim was reasonably rejected by the state courts.

Accordingly, Pitts' prosecutorial misconduct claim is without merit.

## C.

Pitts' third claim involves several allegations of ineffective assistance of counsel that were raised during various stages of state direct and collateral review. He asserts that his counsel was ineffective for: (1) failing to object to the late addition of the firearms expert, (2) representing Pitts when Pitts' previous counsel came from the same law firm, (3) failing to hire a defense expert witness, and (4) failing to challenge the admissibility of the items found near the scene of his arrest because they had not been subjected to DNA or fingerprint testing. (ECF No. 1, PageID.8.)

To prevail on his claims about trial counsel, Pitts must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

The prejudice prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome;'" instead, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111–12 (quoting *Strickland*, 466 U.S. at 693). In a habeas case, review of an ineffective-assistance-of-counsel claim

> is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190
> (2011), because counsel is "strongly presumed to have
> rendered adequate assistance and made all significant
> decisions in the exercise of reasonable professional judgment,"
> *Burt v. Titlow*, 571 U.S. [12, 22] (2013) (quoting *Strickland v.
> Washington*, 466 U.S. 668, 690 (1984); internal quotation
> marks omitted). In such circumstances, federal courts are to
> afford "both the state court and the defense attorney the
> benefit of the doubt." [*Id.* at 15.]

*Woods v. Etherton*, 578 U.S. 113, 117 (2016) (per curiam); *see also*

*Cunningham v. Shoop*, 23 F.4th 636, 671 (6th Cir. 2022) (stating that,

when assessing a state court's decision on a petitioner's ineffective-

assistance-of-counsel claim, a habeas court must apply "the harsh

standards of AEDPA," as elaborated by the Supreme Court in *Richter*).

"[T]he question is . . . whether there is any reasonable argument that

counsel satisfied Strickland's deferential standard." *Richter*, 562 U.S. at

105.

Starting with Pitts' allegation regarding the late amendment to the

witness list, as set forth above, the Michigan Court of Appeals addressed

and rejected this claim on the merits on direct appeal. The state court

found that the late addition of Molnar was proper under state law, and

therefore, trial counsel was not ineffective for failing to make a futile

objection. *Pitts*, 2019 WL 939020, at \*3. That determination was reasonable. *See, e.g., Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

The state court also found that Pitts was not prejudiced because notwithstanding the expert witness's testimony, overwhelming evidence of his guilt was presented at his bench trial. *Pitts*, 2019 WL 939020, at \*3. That determination was also reasonable. The key eyewitness, Meredith, was acquainted with Pitts, making her identification testimony compelling. (ECF No. 7-8, PageID.441.) Corroborating Meredith and McCrary's testimony was the fact that the jacket worn by the perpetrator and a gun were found at the scene of Pitts' arrest. Police testified that when Pitts was approached, he was wearing a Red Wings jacket, ran into the woods, and then emerged without the jacket. (ECF No. 7-8, PageID.420, 472–473, 477–479) The handgun found in the jacket pocket was missing its grip, matching the description given by McCrary. (*Id.* at PageID.408, 606.) Molnar's testimony connecting the gun to the casings at the scene strengthened the case, but this was hardly a "who-done-it." The prosecution presented a very strong case against Pitts. The allegation of ineffective assistance of counsel based on failure to object to

Molnar's addition to the witness list was reasonably rejected by the state court.

Pitts next asserts that his trial attorney had a conflict of interest because he came from the same law firm as his first attorney, and substitute counsel should have been granted. The argument was raised and rejected at a pretrial hearing. (ECF No. 7-7.) The Michigan Court of Appeals addressed this among Pitts' pro se claims on direct appeal and denied it on the merits:

> Defendant next argues that the trial court should have disqualified his appointed trial counsel, on the grounds that trial counsel worked for the same firm as another attorney who had previously been appointed for defendant. However, the right to appointed counsel does not include the right to choose one's own lawyer. *See People v. Russell*, 471 Mich. 182, 192 n.25 (2004). A right to substitute counsel requires a showing of good cause. *See People v. Strickland*, 293 Mich. App. 393, 397 (2011). Good cause might include a genuine disagreement with trial counsel over the use of a substantial defense or a fundamental trial tactic, but does not include a mere allegation that he lacked confidence in his lawyer. *See People v. Traylor*, 245 Mich. App. 460, 462–463 (2001). Defendant has not presented any evidence that he had good cause for substitute counsel beyond disappointment in the outcome of the representation. Good cause does not include merely working for the same firm as a prior attorney. *See Strickland*, 293 Mich. App. at 397.

*Pitts*, 2019 WL 939020, at *8.

34

This decision did not contravene established Supreme Court law. To demonstrate a Sixth Amendment violation for an alleged potential conflict of interest, a habeas petitioner must establish the existence of an actual conflict of interest that adversely affected counsel's performance. *Mickens v. Taylor*, 535 U.S. 162, 172–74 (2002). Apart from cases of concurrent joint representation of co-defendants, however, a habeas petitioner must demonstrate that he was actually prejudiced by his counsel's conflict. *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002); *McElrath v. Simpson*, 595 F.3d 624, 631 n.7 (6th Cir. 2010) ("The [Supreme] Court in *Mickens* clarified that, for purposes of review under AEDPA, its clearly established precedent has not applied a [presumed prejudice] standard outside the context of a counsel's concurrent representation of more than one defendant.").

Here, Pitts never explained how his trial counsel's representation was affected by the fact that he was a member of the same firm as Pitts' prior counsel. Pitts did not present the state courts with an explicit allegation of prejudice due to a conflict distinct from his other claims of ineffective assistance of counsel. At the pretrial hearing, Pitts argued that his counsel ineffectively argued a motion to quash the charges, but

it is unclear how his association with the same law firm is said to have caused a deficient argument. In any event, the trial court determined that the motion was without merit because sufficient evidence was presented at the preliminary examination to justify the bind-over for trial. (ECF No. 7-7, PageID.324–333.) At no point has Pitts demonstrated a conflict of interest that would support the relief he seeks. Accordingly, the state court reasonably rejected the allegation of ineffective assistance of counsel based on a conflict of interest.

Pitts next argues that his counsel failed to hire an expert witness to counter the prosecution's firearms expert. Michigan State Police Detective Sergeant Dean Molnar, an expert in firearms, testified that the casings found at the scene of the crime matched the gun found at the location of Pitts' arrest and that the gun was functional. (ECF No. 7-8, PageID.522–523.) Defense counsel cross-examined Molnar regarding the fact that no fingerprint testing was done on the recovered firearm, and he opted not to challenge the identification of the casings. (*Id.* at PageID.525–526.)

Pitts speculates that a defense expert might have provided some basis for challenging the identification of the firearm with the casings.

(ECF No. 1, PageID.8.) A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness, however, cannot be based on mere speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Neither in the state courts nor here does Pitts convincingly spell out how presenting a defense expert would have changed the verdict. McCrary also identified the gun found in the jacket with the one fired by the perpetrator because they were both missing a grip, further undermining the contention that a defense expert would have altered the outcome. In the absence of a proffer of proposed defense expert testimony or some other basis to conclude that counsel's choice prejudiced Pitts, he cannot establish ineffective assistance of counsel on this basis. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007) ("[The petitioner] has offered no evidence, beyond his assertions, to prove what the content of [the] testimony would have been; *a fortiori,* he cannot show that he was prejudiced by its omission. . . . And even accepting [the petitioner's] assertion as to [the] testimony, he offers no basis to conclude that, in light of the other evidence presented at trial, it would likely have altered the outcome."). Accordingly, the state court reasonably rejected the claim of

ineffective assistance of counsel based on the failure to call a defense expert to counter Molnar.

Finally, Pitts claims that his counsel should have objected to admission of the jacket and handgun on the basis that the police failed to conduct fingerprint or DNA testing to corroborate that the items were associated with him. (ECF No. 1, PageID.8.) The Michigan Court of Appeals rejected the claim because no such corroborating evidence was required for admission of the evidence:

> Defendant finally argues that the evidence of the Red Wings jacket and its contents found in the woods contemporaneous to his arrest should have been suppressed. Defendant contends that there was no evidence to connect the items to him. The evidence is clearly sufficient for the trier of fact to infer that the handgun was the same handgun used in the shooting, and the jacket was the same jacket defendant disposed of just before his arrest. Defendant has not established any other grounds for excluding the evidence.

*Pitts*, 2019 WL 939020, at *8.

The victim testified that the perpetrator, Pitts, was wearing a Red Wings jacket and that his handgun was missing its grip. (ECF No. 7-8, PageID.408, 412, 419.) Before his arrest, police saw Pitts run into a wooded area wearing a Red Wings jacket and then emerge without the

jacket. (*Id.* at PageID.464–468, 472–473.) The jacket and gun were later found in the area where Pitts had run. (*Id.* at PageID.477–479.) This testimony provided more than a sufficient basis to connect the items to Pitts and allow for admission of the items at trial. Pitts cites no evidentiary rule requiring corroborating DNA or fingerprint evidence as a precondition for admission of physical evidence—and none exists. Trial counsel was not ineffective for failing to make a baseless objection. *Mahdi*, 522 F.3d at 638. The state court reasonably rejected the claim of ineffective assistance of counsel based on failure to object to the admission of the jacket and gun.

Accordingly, Pitts fails to demonstrate entitlement to habeas relief with respect to his ineffective assistance of counsel claim.

## D.

As best as the Court can understand it, Pitts' fourth habeas claim asserts that the trial court was biased against him and should not have presided over his case because the judge presided over prior criminal proceedings against him. (ECF No. 1, PageID.10.)

Due process requires a "fair trial in a fair tribunal" before a judge with no actual bias against the defendant or interest in the outcome of

39

his particular case. *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) Bias sufficient to justify recusal must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). "Extrajudicial conduct encompasses only personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003) (cleaned up). "Personal bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." *Id*. (cleaned up).

Here, the following exchange occurred at the final pretrial hearing after Pitts stated that he wanted a bench trial:

> Trial Court: Do you understand – I want to make sure this record is clear. You understand that you were before this Court in 2006, in case 06-593-FH, which you pled guilty to Counts 1, 2, and 3, and were sentenced. And then, case 99-12211-FC, three charges of armed robbery, armed robbery, and weapons/felony firearm, for which you entered a plea to

an added Count 4 of assault with intent to rob. That, obviously, having presided over these matters, there's no way I can't know about them, but that, if you want me to proceed and hear this as a bench trial, you understand that I will do everything in my power to make a determination based only on the evidence presented in this case and nothing else, not what might have occurred before. You understand that?

. . .

So I've presided and imposed sentence on you in all of those cases, and I will do my best not to consider any of that information, because, frankly, it's irrelevant to the case before us now, and make a decision based only on the evidence presented in court and my review of the law. You understand that?

[Pitts]: Right.

THE COURT: And knowing all that, you still want to proceed with a bench trial?

[Pitts]: Right.

. . .

[Defense Counsel]: Your Honor, I'm advocating on his behalf. I advised him that I believe he should go with the jury route. He's my client, he's an adult, it's his decision to make. I respect that, and I don't have any objection to it.

THE COURT: Ms. Slay, for the People?

41

[Prosecutor]: The People also waive our right to a jury.

THE COURT: Very well. . . .

(ECF No. 7-7, PageID.333–335.)

The record shows that the trial court disclosed its participation in the prior criminal proceedings, and it informed Pitts that it would decide the present case only based the evidence presented. Pitts voiced no objection and indicated his desire to proceed with a bench trial. Pitts does not point to any other source of potential bias, apart from the trial court's adverse rulings. Accordingly, Pitts has not shown the existence of an extrajudicial source of bias that resulted in the denial of the right to be tried before a judge with no actual bias against him or interest in the outcome of the case. Accordingly, Pitts' claim of judicial bias fails as a basis for granting his petition.

## E.

Finally, the Court notes that Respondent asserts that Pitts waived or abandoned many of his claims, and that other of his claims were procedurally defaulted in the state courts.[4] These procedural arguments

---

[4] The Court also notes that Respondent addresses a slightly different set of claims than those that are addressed here. Respondent interprets Pitts as raising

cannot be resolved in a straightforward manner because, as indicated above, the poor quality of Pitts' pro se pleadings makes determining which claims Pitts fairly raised in which proceedings, and even determining which claims he is raising here, quite difficult.

Where, as here, it is far easier to determine that Pitts' claims are without substantive merit than it is to determine whether and when he waived, abandoned, or defaulted any of his claims, the Court may proceed to the merits, as it has in the analysis set forth above. *See, e.g., Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (bypassing the procedural default issue in an "especially complex" case); *c.f. Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018) ("[W]here a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue.") Accordingly, because an analysis of the procedural defenses raised by Respondent is not

---

claims related to the application of state sentencing guidelines, the preliminary examination and bindover, and ineffective assistance of appellate counsel. (ECF No. 6, PageID.192–199, 211–221.) The Court does not interpret the petition as raising these claims and, to the extent that Pitts intended to raise them, he fails to do so even under the liberal standards that apply to pro se habeas petitions. *See Pointer*, 2018 WL 3029137, at *9.

straightforward, the Court exercises its discretion to resolve Pitts' claims on the merits.

## IV.

Because none of Pitts' claims merit relief, as set forth above, the petition for writ of habeas corpus is denied.

Before Pitts may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), a habeas petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Pitts' claims. The Court will therefore deny a certificate of appealability.

## V.

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, and 2) **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated: March 13, 2025                    s/Judith E. Levy
Ann Arbor, Michigan                      JUDITH E. LEVY
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2025.

                                         s/Joseph Heacox
                                         On behalf of William Barkholz
                                         Case Manager